## JOAQUIN GUZMAN'S PRO SE DOCUMENT

## EXTRADITION POINT

On January 19, 2017, Joaquin Guzman Loera alias "El Chapo" was extradited to the United States. As stated in the first motion that was presented by the defense on September 4, 2020, and in the motion that Mr. Guzman presented to this court on October 27, 2020, Guzman faced two accusations; one from the Southern District of California and the other one from the Western District of Texas, since those two districts had requested Guzman through diplomatic channels through the U.S. Embassy in Mexico, as specified in the Extradition Treaty. The Government of Mexico handed Guzman over to the United States Government in Ciudad Juarez on the border with El Paso, Texas, to face the two aforementioned accusations, but Guzman was not taken to either the Southern District of California or the Western District of Texas, which were the only two districts that had requested his extradition from Mexico through diplomatic channels through its Embassy in Mexico as specified in the Extradition Treaty of both countries. Instead, Guzman was taken to the Eastern District of New York to face different charges.

The indictment from the Southern District of California accused Guzman of criminal association, while the indictment from the Western District Texas had seven counts against Guzman; one for Marijuana, another one for money laundering, a murder charge, another charge for cocaine, another one for weapons, and another one for a continuous criminal enterprise. The indictment from the Eastern District of New York had 17 counts, a very big difference.

On January 20th, the prosecution presented Guzman to the Eastern District Court of New York where the charges he faced were read to him. Guzman's defense spoke to the prosecutors and asked for an explanation as to why was Guzman in the Eastern District of New York, since they knew that the Government of Mexico had authorized Guzman to be extradited to the Southern District of California and / or the Western District of Texas. On January 19, 2017, a Mexican Court authorized Guzman to be extradited to either of two districts, and that same day the Mexican Government handed over Guzman in Ciudad Juarez on the border with El Paso, Texas to the United States Government to face the two indictments already mentioned.

Prosecutors replied to Guzman's defense team saying that the Mexican Government had extradited him to New York, because the U.S. Government had requested Guzman's extradition via the Specialty Rule, Rule 17, in a diplomatic note. The defense insisted that they deliver the petition where it corroborated that the U.S. Government had indeed requested Guzman from Mexico to be extradited to the Eastern District of New York.

On February 3, at the hearing, the judge told the prosecutors that they had to deliver Mexico's resignation. The prosecutors on the case turned over 82 sheets, including redacted sheets, and said that this was supposedly Mexico's resignation.

The prosecutors did not provide Guzman's attorneys with the Specialty Rule Request were they allegedly requested Guzman's extradition for the Mexican Government to authorize Guzman's extradition to the Eastern District of New York, to face a 17-count indictment.

Guzman's attorneys presented a motion to the court on May 19, 2017, asking the judge to order the U.S. Government to produce the requested documents; in this case, the

extradition petition to Mexico that the U.S. Government claimed it had made to Mexico. On May 26, the prosecutors replied saying that the documents requested by the defense could not be delivered before the trial, since they contained 3500 material, and that they had already delivered the extradition petition, and that that was enough. The judge ruled in favor of the U.S. Government on July 19, 2017.

Guzman's defense team resubmitted another motion on August 3, exposing to the Judge the case of Barinas, of a Dominican who was on probation and went to the Dominican Republic and was later arrested and extradited to the United States and sentenced to a one year probation. The Government answered his motion on August 31, saying that the case of Barinas was not the same as that of Guzman, since Guzman had been requested from Mexico through a diplomatic note and that the Government of Mexico had given the resignation to the Specialty Rule for him to be extradited to the Eastern District of New York to face a 17-count indictment. None of this is true, since there was never a request for the Rule of Specialty to Mexico on January 19, 2017 through diplomatic channels through his Embassy in Mexico as specified in the Extradition Treaty.

Guzman wonders how they had the resignation of Mexico that they handed over to Guzman's defense of 82 sheets, if there was never a request for the Rule of Specialty to Mexico? It is clear that those documents that were delivered to Guzman's lawyers were fraudulent.

Guzman submitted a pro se motion to the Second Circuit on October 27, 2020. In that document Guzman asks the U.S. Government how is it that they had Mexico's resignation of the Specialty Rule if there was never a request for the Specialty Rule to Mexico through diplomatic channels, through its embassy in Mexico as specified in the

3

Extradition Treaty, and how did they get the resignation of Mexico that they handed over to the defense. On March 23, 2021, the U.S. Government filed its answer, but they did not answer Guzman's question. Instead, they only said that the Second Circuit had already decided so in the case of Barinas.

I, Guzman, understand that the Second Cricuit in Barinas decided that way, that the country that agrees to the extradition of a person to the United States will be the country that must fight the case and not the extradited person. But my case is different. Here this case is completely different from the Barinas case, since the defendant in Barians was extradited to New York, where he had his probation case and he was under probation and for that reason he was detained in the Dominican Republic, because he left without finishing his probation.

The U.S. Government said it in its motion that they presented to the court on August 31, 2017 and now in their motion that they presented on March 23 to the Second Circuit, they change their version and contradict themselves. In the motion of August 31, the U.S. Government says that the Barinas case is not the same as the Guzman case. And in this last motion that they submitted on March 23 to this Court, they say the opposite. They say what is convenient to them, regardless of contradicting themselves. For that reason, the case of Barinas is not the same as that of Guzman. For the reasons already stated that he the defendant on Barinas was on probation and left, that is why he was extradited back to New York where he was sentenced to one year and one day.

The case of Guzman is completely different, since in the case of Guzman, the Government of Mexico agreed for Guzman to be extradited to either the Southern District of California and to the Western District of Texas, which were the only two districts that requested his extradition, through diplomatic channels through the U.S. Embassy in

Mexico. The Government of Mexico does not know why Guzman went to New York. The United States Government took him to New York arbitrarily and by lying to the judge. They also lied to Guzman's lawyers assuring that they had taken Guzman to New York, because they had requested it through the Specialty Rule, and even knowing that they were lying, they fought the case by filing two motions alleging that Mexico had granted the extradition.

Mexico never received any request for extradition through the Rule of Specialty on January 19, 2017 through the diplomatic channel through its Embassy in Mexico as specified in the Extradition Treaty. The United States Government lied and committed fraud in violation of the law and that is a crime. In Guzman's case, the U.S. Government did anything to get Guzman prosecuted in the Eastern District of New York as you can see, that the Government lied and cheated. They violated the law in this extradition case.

Guzman asks that it be resolved according to impartial law, that Guzman's sentence be annulled and that he be taken to the Western District of Texas or the Southern District of California, which were the two districts that the United States Government legally requested his extradition.

I want to clarify that in the motion that my lawyer submitted to this Court on September 4, 2020, he says that Guzman was extradited to Southern California and Western District of Texas and that the U.S. Government had permission from the Mexican Government to be extradited to Eastern District of New York, but that is not correct. My lawyer surely believed what the prosecutors said in their motions that they brought to court; one on May 26, the other on August 31, 2017 in response to the defense's motions. The U.S. Government alleged in its motions that they requested Guzman's extradition through a diplomatic note, which is not true.

The U.S. Government says that in their motion of August 3, 2017, the defense did not argue that because Barinas ruling was already out. The defense did not argue it because they did not doubt the government. The defense thought it was true that there was such a request to Mexico using the Specialty Rule as alleged by the Government. For that reason, Guzman's attorneys said that in their motion, but they never imagined that the U.S. Government was lying.

### FBI AGENT STEPHEN MARSTON POINT

According to the FBI agent Stephen Marston, he began the investigation of Guzman's case in March of 2011 with the servers of the Netherlands, and with the help of the confidential informant Christian Rodriguez. The Dutch servers are the brains of this case.

The United States Government always said that Guzman spoke from three servers (two for voice and one for messages). The IPs of the servers used for voice calls ended in 70 and 226, and IP of the server used for messages ended in 27. The curious thing is that in Stephen Marston's cross-examination at trial, Guzman's lawyer asked him about the extensions that the witness claimed that Guzman allegedly used. The witness said that the extensions that Guzman used to speak were extensions 185, 120 and 121. Then Guzman's lawyer asked him if the IP of extension 185 that Guzman allegedly called from, ended in 226, and the agent answered yes.

Now, the calls that are attributed to extension 185, the three-digit code that agent Stephen Marston said that Guzman used, really came from an IP that ended in 103. The lawyer asked that question to agent Stephen Marston, but he then said that he did not remember.

6

The calls came from a server whose IP address ended in 103, and did not come from the servers whose IP addresses ended in 70, 26 or 27. The witness did not know anything about a server that ended in 103. This is so because the U.S. Government lied. The prosecutors awarded the Dutch servers to Guzman and in the trial they did not present any calls from the Dutch servers that did have an order from the Dutch judge. The server whose IP address ended in 103 never had an order from a Dutch judge and was never included on any of the MLAT extensions. All the calls that the government presented in the trial came from the IP that ended in 103, which never had an order from a judge, like the other servers did.

The prosecutors committed fraud. First, they awarded Guzman the Dutch servers, and at the trial they did not present any calls from these servers. None of the calls presented at trial came from the Dutch servers. The calls they presented at trial came from a server whose IP address ended in 103, which was never part of the MLAT extensions. That is why agent Stephen Marston said that he does not know of the IP ending in 103 and that he could not explain why. First, he said that Guzman was talking from a server whose IP address ended in 226 and that it had the extensions 185, 120 and 121, but he never imagined that Guzman's attorney was going to unmask him, showing him that he was lying and asking him about the IP that ended in 103. The witness instead said he could not explain why, because he knew he was lying and the lawyer had discovered it.

In the pro se motion that Guzman presented to the Second Circuit on October 27, 2021, Guzman denounces what happened in the trial, that the prosecutors did not present evidence from the Dutch servers, and that the calls they had presented were from a server whose IP address ended in 103. Guzman explained that they had confused the judge as

well as the defense, making them believe that those calls were from the Dutch servers. In the response presented by the U.S. Government on March 23, 2021, they ignored Guzman's statement and did not answer anything regarding this point. The only thing the government replied to the defense regarding that point was that the IP that ended in 103 had a connection with the IP that ended in 70, something that is completely false. Neither agent Stephen Marston nor the confidential informant Cristian Rodriguez ever said that there was an IP ending in 103 that existed. When they were asked about that IP, they said that they did not know about it, much less that it was linked to the IP that ends in 70.

The United States Government has done everything possible to try to confuse the evidence that they delivered on April 10, 2017. If you see the evidence that the U.S. Government handed over on April 10th, of 2017, you will be able to see that the calls come from an IP ending in 103.

If you look at the calls presented at trial, you will see that most if not all of the calls that they presented at trial came from a server whose IP address ended in 103. But it is very clear from the testimony of the agent Stephen Marston and from the testimony of Christian Rodriguez, that they said that they did not know from that IP ending in 103.

It is very clear once again that the U.S Government committed fraud, since they always said that the calls were from the Dutch servers and that they all had a judge's order. They never said that they used calls from a server whose IP ended in 103, that it had no warrant from a judge.

The fact that Guzman's lawyers did not realize that the calls that the U.S. Government presented at trial were not from the Dutch servers, and instead were actually from an IP that did not have a warrant (IP ending in 103), does not justify them lying to

the judge, jury and the defense about the origins of these calls. That is a crime of lying and breaking the law.

Like most of the calls that they presented at trial, they did not deliver transcripts to be able to listen to them, since in listening if they gave evidence of the calls that they presented in the trial and they will realize that what Guzman said is true. They will be able to read the calls that they presented in the trial and listen to them and thus they will be able to realize that those calls are from the IP that the number ends in 103. That evidence as I said before is found in the production of April 10, 2017 and in the Rule 16 that the Government gave.

In the calls that were presented in the trial, you can read some calls whose transcripts were delivered. There are two calls that were made on May 10, 2011 that were presented at trial. In one of these calls, the prosecutor says that it was between Guzman and an unknown person. According to the prosecution, Guzman asks if he has clients in Los Angeles and the person answers no, that in Ohio he does have clients for cocaine. Later, according to the prosecutors, Guzman asks if it is for cocaine or ice and the person answers that it was for cocaine and says ice no.

On page 4616 of Stephen Marston's cross-examination transcripts he says that the informant Christian Rodriguez was paid $460,000 for his collaboration. It is clear that he was paid to lie to harm Guzman. The U.S. Government contradicts itself with its own witnesses, neither the informant Rodriguez nor the agent Marston said that there was an IP that ended in 103 as they assigned the calls from that IP to Guzman and presented them to the trial as if they were from the Dutch IPs.

According to an FBI agent, Guzman contacted a communications engineer named Christian Rodríguez, who had worked for the Cifuentes Villa family in Colombia, who

were engaged in drug trafficking. According to the FBI agent, Christian Rodriguez installed a communications network for them to avoid being intercepted by the Government. The informant said that through them he met Guzman, since the Cifuentes Villa supplied Guzman with cocaine. The informant said that when Guzman realized what Christian could do, Guzman asked him to install a communications network for him like the Cifuentes's network. According to Christian's saying, he began working for Guzman in 2009, urging him to use an encrypted communications network so that he would not be detected by police.

According to the FBI, Guzman was the leader of a drug cartel called the Sinaloa Cartel in 2009 and that Guzman allegedly began using encrypted communications along with all members of the alleged Sinaloa Cartel. The communications consisted of three servers that were installed in 2009 by the technician Christian Rodriguez, according to the saying of Christian and the FBI agent, on Guzman's orders, Christian transferred the servers from Mexico to Canada. When the servers were already in Canada, on February of 2011 Christian Rodriguez became an FBI informant and then on that date, he changed the servers to the Netherlands. According to the FBI, Christian began to download the information produced by the servers that claimed to be from Guzman and to give it to the FBI, since it was not a problem for Christian to have the evidence, since he was a man that Guzman trusted.

Once the servers were in the Netherlands, the United States Government requested the collaboration of the Dutch authorities, and, in turn, got a warrant from a judge to intercept communications from three servers that were in the Netherlands. The American Government made the request with bad faith using Guzman's name and notoriety, saying in the request that those three servers were owned by Guzman and that

Guzman was the leader of a drug cartel in Mexico called the Sinaloa Cartel and that Guzman was the largest drug trafficker in the world and the most dangerous one.

On April 6, the three servers had a warrant from a judge in the Netherlands to intercept the communications. The U.S. Government claimed that one of the servers, whose IP ended in 70, was used to communicate to any telephone. The Government also alleged that the second server, whose IP ended in 226, was used by members of the alleged Sinaloa cartel to communicate with each other and that the third was used for communications from laptop devices, encrypted emails and BlackBerry text messages. They obtained the permission of a Dutch judge on April 13, 2011 and then renewed the requests every 30 to continue intercepting the communications of the three servers.

In the motion that the United States Government presented in response to the defense motion dated July 30, 2018, they say that they were renewing the extensions every 30 days through MLAT requests, to continue intercepting communications until December 2012. But they contradict themselves, because in the motion that they submitted to this Court on March 23, 2021, they said that they were renewing the MLAT requests every 30 days from the three servers until December 2011, a very different date from the one they said in the first motion that they presented on July 30, 2018.

Also, important is the point that none of the three Dutch servers belong to Guzman, since there is no evidence on any of the three servers that incriminates Guzman. And this is not said by Guzman, but by the evidence. These three servers were awarded to Guzman in bad faith and by lying.

U.S. prosecutors delivered 117,000 calls and dozens of text messages in late July or August of 2018. Neither the calls nor the messages are from Guzman. The evidence is in the evidence they delivered, since the calls they presented at trial were not from the

Dutch servers, but instead were from a server whose IP address ended in 103. And the calls presented at trial were presented as if they had come from the Dutch servers, but that was not true. And what is worse is that the server whose IP address ended in103 never had a search warrant from a Dutch judge, like with the other servers.

It was also clear that those fraudulent calls that they presented in the trial that came from the IP that ended in 103 were not from Guzman, since even one of the witnesses, Pedro Flores, could not identify Guzman's voice in one of those calls. Pedro Flores was a government witness who had allegedly heard Guzman speak many times on the phone and in person.

The U.S. prosecutors presented in evidence a video where Guzman is speaking, which was published in the Rolling Stones magazine in January 2016. On cross examination of Pedro Flores, the defense played that video for him, and then played a voice call that was also in evidence, where the government alleged that it was Guzman speaking. The witness Pedro Flores, who alleged that he had spoken with Guzman several times in person and on the phone, upon hearing the video and the voice call, said that the voice in the voice call did not resemble Guzman's real voice.

The prosecutors in the case lied, cheated and broke the law. They did not mind doing anything to convince the jury to convict Guzman as it was and even more, the evidence they used was evidence from the server that had no warrant from a judge that came from a server whose IP address ended in 103.

In the defense's motion dated July 9, 2018, the defense says that it does not agree with the evidence of the Dutch servers and makes an explanation because it does not agree with that evidence. The prosecutors in their answer say that Guzman had no right to fight that because the fourth amendment did not protect him to try to suppress the

evidence of the Dutch servers, since Guzman was a foreigner and that the Dutch servers had a judge's order. They also explain that the U.S. Government obtained the evidence in three different ways. The judge agreed with them and ruled in favor of the Government.

I want to make a clarification and it is the following: in the motion that Guzman's lawyer submitted to this Court on September 4, 2020, said that the evidence that came from the server whose IP ended in 103, was allowed by the Judge, but I make the clarification that the lawyer is confused, since in the motions that the United States Government presented, they never spoke of there having been a server whose IP address ended in 103.

The calls from the server whose IP address ended in 103 were never ordered by a Dutch judge and for that reason the judge should have never authorized them to enter the trial as evidence. It is completely clear that what the defense attorney said in his motion that he presented on September 4, 2020 to this Court was not correct. Judges, you will be able to read the MLAT extensions of the Netherlands and you will realize the lies of the prosecutors. Judges, you will be able to read them and you will realize that what Guzman wrote is true.

Going back to the servers, on the Government's motion of August 29, 2018 on sheet three of their motion, Special Agent Gray says he was unaware that the Holland servers and Flexispy accounts were from Guzman. Once again, it is clear that FBI agent Stephen Marston and confidential informant Christian Rodriguez did everything in order to harm Guzman. The FBI paid Christian Rodriguez $460,000 to make this story up.

The Government has contradicted itself time and again and then they changed their version and said that the text messages did not come from the Dutch server, but came from the FLEXISPY system, which was supposedly a spy system, and that

13

according to the confidential informant Christian Rodríguez, Guzman asked him to install this system to spy on different people. But a four-year-old would not even believe this, as there is not a single piece of evidence that show that the text messages came from the FLEXISPY system.

Those calls were completely fraudulent and the text messages too. Although the judge gave permission for them to appear, they are still fraudulent. Prosecutors lied and cheated and violated the law and that is a crime. People who hold public office are supposed to enforce the law not to violate it as in this case.

Going back to the FLEXISPYY C ompany and the supposed Amazon company server where they supposedly stored the data that the BlackBerry threw and that supposedly was received by FLEXISPY and then sent and stored in the supposed servers of the Amazon company. But it is the pure saying of the government; since there is no evidence to support the Government's version that Christian Rodriguez bought the FLEXISPY for Guzman to spy on girlfriends and workers. There is no evidence that he has told the Amazon Company about his interest in having the registration and that the Amazon company has replied that it was almost impossible to have them.

The U.S. Government has very capable people to investigate high-profile cases like this. The U.S. Government claims that Guzman was the most dangerous man in the world and the largest drug trafficker in the world and that they investigated him for almost three decades. Guzman wonders, if the Government had almost three decades investigating him, where is the evidence that proves that saying? Where are the properties and where is the money or fortune that Guzman owns? If Guzman were the person that the Government claims he is, then they would not have needed to make a case based on lies and fraud in violation of the law.

It is a true story that began in complicity with the informant named Christian Rodríguez and the FBI. Later the prosecutors of the case followed along, and of course, with the support of their bosses. But the informant did not help to make the story for free. The U.S. Government paid him $460,000 to help them make this story against Guzman and with the fraudulent evidence of alleged servers of the Amazon company and the FLEXISPY company.

On December 29, they transferred the data from the alleged Amazon company server to a DVD and took it to the Southern District of New York, and stored it in an FBI office. On January they had a search warrant and in February they had another search warrant. On March they had another search warrant. The three warrants were in the year 2012.

Then the Government says that through search warrants in Los Cabos Baja California, in a house supposedly belonging to Guzman they found evidence of Guzman. But neither the house nor the evidence allegedly found in it belonged to Guzman. They arrested four people and the people testified in Mexico and there is no statement from the four people arrested who said that the house belonged to Guzman or that the evidence belonged to Guzman. If the Government's story that the evidence that they allegedly found in the Cabo San Lucas house was from Guzman were true, they would have presented the statements of the four people arrested, since those people said who they were and what they were doing at the house. But there is not a single statement that supports the Government's story because they did not present the statements of the arrested people, because it did not suit them.

The bad publicity they gave Guzman through the media was so much that they turned him into a monster and had to arrest him. Guzman's case is too political. On

January 23, 2014, they carried the fraudulent messages and requests that they made to the Government of the Netherlands and which in turn had warrants from a judge to intercept the communications of the three servers that were in the Netherlands. The evidence from those three servants from the Netherlands does not belong to Guzman. They brought the evidence to the front of a grand jury in the Southern District of New York on January 23, 2014, affirming that this evidence belonged to Guzman, the most dangerous man in the world and the most cruel and ruthless who ran a drug cartel in Mexico. The grand jury believed the prosecution for the fraudulent evidence they used.

The same year, but in September of 2014, they brought the same evidence that they had presented to the grand jury on January 23 in the Southern District of New York, but this time it went to the Eastern District of New York in front of a grand jury and in this occasion, it included more evidence telling the grand jury the worst things about Guzman and showing them the fraudulent evidence that they had shown to the grand jury for the Southern District of New York. But this time they brought more evidence, such as evidence from the servers of Holland, to convince the grand jury to approve the 17-count indictment.

You Judges can verify the accusation and you will see that they used the evidence and said that Guzman discussed drug trafficking in multiple calls and text messages and that he was the head of the alleged Sinaloa Cartel. The same story that they always use in all the evidence. With that fraudulent evidence they had the prosecution of the Southern District of New York and the prosecution of the Eastern District of New York. With this fraudulent evidence, they made Guzman look like an unscrupulous person, ruthless, cruel and hated by society.

**VIOLATION 85 POINT**

16

The violation 85 was a murder conspiracy. In February of 2018, the Government submitted a 90-page motion to the court asking the judge to authorize them to bring a series of murders to trial, and the judge authorized that evidence to be admitted. By the time it came to trial, they had already put 26 murders. The Government exhibited the 26 murders to the jury, assuring them that Guzman ordered these deaths without giving any time or place, nor without having a single piece of evidence to support the saying of the government's witnesses. There was not even evidence to prove that these people were dead, not even photographs or death certificates; just the plain saying of the Government's witnesses.

The government witnesses were lying at trial as prosecutors had the evidence of everything they had discussed since they arrived in the United States. The government did not care that the witnesses lied, since what mattered to them was convincing the jury to convict Guzman, regardless of the lies and violations of the law. With great dedication and lies, they convinced the jury to convict Guzman. The witnesses negotiated to lie in exchange for their freedom, since after Guzman's conviction, almost all the witnesses are free or about to be free. The only one who will remain in prison for just nine more years is Dámaso Lopez, who was sentenced to life in prison, and then his sentence was overturned and sentenced to 14 years. Two of the 14 witnesses (Miguel Angel Martinez Martinez and Cristian Rodriguez) were not in prison when they testified against Guzman and they went to the trial to lie, because the American Government offered them a visa to stay in the United States. They turned Guzman into a true monster and they did not mind releasing all those people, whom together had committed many crimes, and whom were hit men and drug traffickers.

Also, one of them, Jorge Cifuentes Villa, was a terrorist who even gave five million bullets to a group of people called "paramilitares" in Colombia in the mid-90s, when thousands of people would die with five million bullets.

The other witness, Christian Rodríguez, an alleged computer technician, worked with the U.S. Government and even earned $460,000. The 14 witnesses had benefits, such as freedom, visas and money and are happy with their visas.

Guzman's case is too political. It all began on May 24, 1993. At that time Guzman did not exist for the American Government. But the Mexican Government blamed Guzman for having killed Cardinal Juan Posadas Ocampo and they made this false story known to the media. They said the cardinal had died in a crossfire between Guzman and a group of drug traffickers. But the theory of the Mexican Government was denied by the forensic doctor who made the autopsy. The coroner said that Cardinal Posadas Ocampo did not die in a crossfire as the Mexican Government alleged. The Church blamed the Mexican Government for having killed the Cardinal. But to divert attention, the Mexican Government made it known to the media that they were looking for Guzman, since Guzman had killed the Cardinal. They did a very big hunt on Guzman and Guzman, seeing that the government blamed him incorrectly, fled to Guatemala, since he knew that if the government found him, they would kill him or they would unjustly leave him imprisoned for the rest of his life to make the people believe that Guzman had killed the Cardinal.

There was so much publicity in the media that the Government of Guatemala found him and handed him over to Mexico. A year later, while Guzman was in prison, the judge found no evidence to show that Guzman had killed the Cardinal, but even so, they did not let Guzman go. That same day they fabricated several other cases against

Guzman so that he could not get out of jail, such as a series of drug trafficking and murder charges. After 7 years, Guzman was sentenced for a misdemeanor and not even one felony. As it was not a felony, the judge bailed Guzman, but the next day when they went to pay bail, Guzman's lawyer was surprised that by order of the Supreme Court, they could no longer receive the amount of the bail, because the President of the Republic had ordered the court to suspend the bail. I know that you Judges will think that the judiciary is autonomous and that it does not receive an order from the President of the Republic. But that is not the case in Mexico; in Mexico this happens, as for example when Peña Nieto was there. Now that President Andrés Manuel López Obrador is here, it may be that there is more respect for the Constitution.

But by then Guzman had been taken to Guadalajara Jalisco. The Government had a lot of pressure from the Church. The Church blamed the President of the Republic, Carlos Salinas, for having ordered the death of the Cardinal, and to this day, the Church continues to blame him. At the end of his presidency, Salinas fled and went into hiding in another country. The Mexican Government did not release Guzman, because then they wouldn't have had anyone to divert attention with, since the entire people of Mexico did not trust the Government, because it was rumored that Salinas had ordered the Cardinal to be killed.

They continued to fabricate cases for Guzman, and Guzman had no choice but to escape in 2001. But Guzman did not use violence, not even verbally, in his escape. It became clear that he is not the man the Government paints as a violent man. They made Guzman look like a monster, but it is the pure saying, as there was no evidence to back up that saying of the Government. They made a very big hunt for Guzman and every thing that happened in the country or every death, the Mexican Government blamed

Guzman. They gave Guzman very negative publicity until they turned him into a monster.

Then the United States Government also began to blame Guzman and put him as the leader of the Sinaloa Cartel. They even gave a press conference, where the American Government said that Guzman was Chicago's number one enemy and that the drugs that reached Chicago belonged to Guzman. But that was purely a tale, since there was no evidence of that.

## JURY MISCONDUCT POINT

A day after the jurors' verdict on Guzman's trial, a juror contacted a journalist from the newspaper "Vice News" who covered the trial, named Keegan Hamilton. That juror knew the aforementioned journalist perfectly well, and he told Hamilton that he wanted to confess to him everything that had happened at Guzman's trial behind the scenes. Journalist Hamilton agreed and an interview was conducted. The interview lasted two hours, and the juror told him of a large number of irregularities.

The juror said that he and other fellow jurors had ignored the judge's instructions, ignoring the Judge every day. During the time that the trial lasted, the Judge told them that they could not see the media, but this juror said in the interview that this was not the case. The jury member said that at least five members of the panel and two alternates followed the media for the three months that the trial lasted, and that they were paying attention to what the media was talking about and that they lied to the Judge every time he asked them if they had seen the media.

When the article of one of Guzman's lawyers, Litchman, appeared in the newspaper "New York Post" dated January 14, 2019, where it was said that the lawyer was taking dancers to prison for Guzman, the Judge met with the jury and asked them if

they had seen the article and they denied having seen it. Then another article came out, dated February 2 or 3 of 2019, that said that Guzman had raped 13-year-old girls, and when the Judge asked them if they had seen the article, they all answered no. As soon as the Judge left, a member of the jury took out a smart watch and they all saw the article. The member of the jury said that he thought that the Judge would surely return to ask them in private, and that if that happened that everyone had to say no.

The jurors are people who do not know how to apply the law, since not one of them is a lawyer. Therefore, it normal that what they see in the media they take very seriously. Those two articles were very strong and more so the article that said that Guzman had raped underage girls. That is too disgusting, since we all have mothers, sisters or daughters. Who would like to have someone in the family raped? A person accused of that is hated by society. With what came out in the press, the prosecution no longer needed more evidence to convict Guzman, since that article surely poisoned the jurors' minds against Guzman.

The juror also said that they discussed Guzman's case during court breaks, when they went to eat and when the Marshalls transferred them from the court to the place they were dropped off when they left the court.

The U.S. Government asked the Judge before the trial began in a motion dated January 5, 2018, to authorize them to partially sequester the jury and not to release their names or addresses, and to be picked up in a secret place in the morning and taken from the court in the afternoon to that secret place in a bus escorted by the U.S. Marshalls, claiming that as Guzman was too dangerous, and that if he knew the identities of the jurors, he could have them killed.

21

The media published all this and the jurors followed the media for the three months that the trial lasted. They looked at everything that was published and it was normal for them to be scared when they saw what was published against Guzman. The members of the jury thought that Guzman was guilty when they saw that they were being escorted in the bus and that their identities were anonymous. In their minds it was already clear that Guzman was a very dangerous man and they took seriously what the media published.

The prosecutors did that in order to contaminate the jury. They used a series of strategies to convince jurors to convict Guzman. Guzman wonders if the Government said in their motion of February 3, 2017 that they wanted to put Guzman under the SAMs rules, arguing that Guzman was very dangerous and that if they did not put him under the SAMs rule, he could have witnesses killed or harm people, if Guzman was already under the SAMs rule, then why partially kidnap the jurors and escort them every day, creating a circus and putting fear in their minds and prejudging them against Guzman?

Guzman could not and cannot communicate with the outside world. He can only speak to his lawyers and his sister, his mother and his two 8 year old daughters. They did everything to create a circus and harm Guzman. Like the circus they would create each time they would close the Brooklyn Bridge to move Guzman from the jail to court and back. Quite a show to scare the jury, since that was always published by the media.

Jurors followed the media for the three months that the trial lasted and also followed Keegan Hamilton's Twitter account. Every day the media published the worst things that they could say about Guzman, and the members of the jury looked at those articles daily, infecting their minds.

Even a government witness, Vincente Zambada, said that there was so much negative publicity from both governments (the American and Mexican) against Guzman, to be able to arrest him. Another witness who said something similar was a federal national security agent, Zappone, who said that he had investigated Guzman for a year and that his conclusion was that Guzman did not bring drugs to Chicago and that Guzman was a myth. But the Judge did not let that statement enter to trial.

The DEA had said at a press conference that Guzman was Chicago's number one enemy, since he carried all the drugs to Chicago, and who contradicted what that DEA agent said was Zappone, a federal agent, since he did know what had happened with Guzman because he was investigating him for a year.

## SAMs RULES POINT

Guzman was extradited to New York on January 19, 2017. On February 3rd, they placed Guzman under the SAMs rules, arguing that it was too necessary to have Guzman under the SAMs, since Guzman was too dangerous and that from inside the jail he could have the witnesses killed, and that for this reason he had to be kept away from the outside world and without speaking to the media or other prisoners. Guzman could not have visits from his wife or calls with her, because he could help Guzman escape. The prosecutors made mention of several more horrible things in their letter of February 3rd of 2017 and even more, they also sent the Judge a sealed letter that neither Guzman nor his lawyers could ever see what it said, but it was to poison the mind of the judge and have him put Guzman under the SAMs rules. The prosecutors authorized Guzman to receive visits only from his two girls, who were four years old in 2017, and also authorized the visit of one of Guzman's sisters, but the sister has never been able to visit him, since they have denied her visa to come to the United States.

Guzman received and still receives completely inhumane treatment. He can't even hug his girl. He can only make two calls a month of fifteen minutes each and only to his girls, or to one of his sisters and to his mother. Guzman cannot send greetings to his other children or other family members in these calls, and if he did so, his calls would be cut off, as they are monitored in real time by the FBI.

Guzman was also prohibited from having contact visits with his attorneys and this made it impossible to review the evidence properly, such as the 330,000 pages that they provided.

In its motion of February 3, 2017, the government said that the SAMs rules were very necessary, since Guzman was so dangerous and the largest drug trafficker in the world and he could order to kill people from inside the jail. They did everything in order to poison the Judge's mind, so that the Judge would authorize what they requested in their motions, as was the case throughout the entire process. The Judge was partial in favor of the prosecutors throughout the process, and Guzman does not say so, the evidence says so and it was not a single sealed letter, but there were about 20 sealed letters that the U.S. Government sent to the court. And why sealed? Because they did not want Guzman's attorneys to found out about their lies.

The American Government was very astute, since it knew that if they put Guzman under the SAMs, incommunicado, it would not be easy for him to defend himself, and it would be easier for the Government to get away with all the traps and lies they got away with. The U.S. Government did everything fraudulently, violating the law.

Guzman filed a motion in this court on October 27, 2020, where he states that the Government said that it was necessary to put Guzman under the SAMs rules, because Guzman was very dangerous and that he could have witnesses killed from inside the

prison or that it was possible to escape, but the reality of that exaggeration was because the Government did not agree that Guzman could defend himself, as it happened, due to the government's exaggeration in the conditions that Guzman found himself in.

In its response of March 23, 2021, the Government did not answer anything to what Guzman denounced, because they knew that what Guzman said in his motion was true, and Guzman does not say it, the evidence confirms it and to this day Guzman is kept in confinement under conditions of confinement that are too cruel and inhumane.

There has been too much trouble writing the two appeal motions since for the first motion, Guzman's defense team could not visit him due to COVID-19 and they authorized four legal calls per month lasting one hour, but on several occasions, they did not give the four calls a month to Guzman and they only gave him two or three calls a month. Obviously, two or three one-hour calls a month weren't enough for Guzman's lawyers to read everything to him and discuss ideas. For that reason, Guzman's attorney took fourteen months to finish his appeal motion. This was too unfair.

Everything has been too personal towards Guzman. When the lawyers have the need to hire a paralegal to visit Guzman, the prosecutors and case agents take more than a month to authorize the person so that they can then go to sign the SAMs at the Denver prosecutor's office.

On February of this year 2021, Guzman's family contacted an attorney to see the possibilities for that attorney to continue with Guzman's appeal. The lawyer contacted the prosecutor in February 2021 to sign the SAMs so that he could come and visit Guzman and it took two months before that lawyer was authorized to sign the rules. It is demonstrated once again that the SAMS rules were put in place to be able to control Guzman in an unfair way and so that he could not defend himself.

I want to clarify that when I say "the government", I mean the prosecutors who handle my case, since I know that the government is made up of many agencies and thousands of workers and I cannot generalize. That is why I clarify that I am referring to the prosecutors on my case, since the prosecutor who is in charge of the case does not authorize the signing of the rules in a reasonable time. It is okay for a week or two, but it always takes more than a minute and that's an injustice. Just as it is an injustice that Guzman is only authorized two legal calls per month lasting one hour, while the appeal is in process, since communication between lawyer and client is vital. They do everything for revenge, since Guzman in his motion exhibited the lies of the prosecutors throughout the process, violating the law from Guzman's extradition to New York, which was not legal, until the last day of the trial.

To this day prosecutors continue to use the SAMs rules for their benefit and to torture me. Everything has been a great abuse of power, since I was extradited to New York on January 19, 2017, when Trump came to power. Guzman was a trophy. And from that moment on, the law was not respected in Guzman's case. Judges, Guzman hopes that upon reading this motion, you will realize that what Guzman stated in his motion is true and that the SAMs rules were set by the Government for their benefit and to torture him. Guzman asks that you please remove the SAMs rules.

### **VIOLATION 27 POINT**

Guzman's original accusation was for drug trafficking, but by the time the trial came, the Government had amended it to include 26 deaths. The Judge authorized those 26 murders to enter the trial, without there being any evidence that those people were dead. The only evidence the government claimed to have to corroborate these deaths was the statement of four government witnesses.

26

Guzman submitted a motion on October 27, 2020 to this court, exposing this situation that the government. There was never evidence such as death certificates or photos or even newspaper reports or testimonies from relatives of those dead, which corroborated that those people were actually dead. The only thing the Government did was bring in four witnesses who said that those people were dead. But those witnesses were motivated to lie. The Government in its motion that it presented on March 23, 2021 did not answer anything of what Guzman said in his motion and they did not answer anything because they know that what Guzman said is true.

The only thing they said in their motion was that to prove a charge of cooperation, the government does not need to establish that the death occurred, only that the defendant agreed with others to murder someone. Basically, the government says in its motion that Guzman agreed with others to murder a person and that that is enough, even if there is no evidence. Of the three witnesses who spoke about the 26 murders, one of them is named Vicente Zambada.

Zambada was a main government witness and at the trial he admitted that he had killed many people or had ordered the deaths of many people by orders of his father, Mayo Zambada. Vicente never said that he received orders from Guzman to kill those 26 people. The other government witness, Damaso Lopez, said that he knew that Guzman had ordered to kill some of the 26 people because he heard it from other people and that Guzman himself had told him. Neither Vincente Zambada nor Damaso Lopez said that Guzman had agreed with them to kill some of those people.

The third government witness, Isaias Valdez alias "Memin", spoke of three events involving deaths. But he did speak his mind to the jurors against Guzman. Memin said that Damaso Lopez had kidnapped two people from a rival group of Guzman called "Los

Zetas" and that he then had sent them to Guzman as a gift to the mountains where Guzman was staying and that Guzman tortured, killed and burnt them. That evidence is in the Memin 3500 material that the government released. Guzman's defense did not question Memin at trial about what Memin had said. The government also did not ask Memin during the direct examination about what Memin had told them before the trial. The government did not ask him anything because it did not suit him, since Damaso Lopez never kidnapped those people that Memin told the government. The government knew that what Memin had said was not true, since when Damaso Lopez was arrested in Mexico, he confessed all his crimes to a prosecutor in Mexico and agents of the United States DEA and Damaso Lopez never spoke of that alleged event Memin spoke about at trial. This is because it was not true.

Damaso Lopez was extradited to the United States and he had to confess to all his crimes. How is it possible that he forgot to talk about that grotesque event that Memin spoke about at the trial? Because what Memin said was not true and the government knows it perfectly. Had it been true, the government itself would have asked Damaso Lopez about this event in direct examination, but they did not. And my attorney didn't ask Damaso Lopez during cross-examination either.

The fourth witness, Alex Cifuentes Villa, also spoke of a dead man and spoke of agreeing with Guzman to kill a woman because she was allegedly collaborating with the government. There were so many lies that this witness spoke, that the next day, Guzman's lawyer tried to continue questioning him and the judge told the lawyer that it was better to continue with another witness and to stop questioning Alex Cifuentes because it was like hitting a dead horse, because that what that witness was saying was not credible.

**JURY INSTRUCTIONS POINT**

In the instructions that Judge Cogan gave to the jury, he told them that the calls that were presented at the trial were authorized by a court, which was not the case. That is not correct what the judge said, since the calls that were presented in the trial came from the server whose IP address ended in 103, which was a server that never had a judge's warrant and that the government never included in any of the MLAT extensions. The calls that had a warrant were those that came from Dutch servers, but prosecutors did not use any of those calls as evidence at trial. They only presented calls that came from the server whose IP address ended in 103. The prosecutors lied to the judge, making him believe that the calls they presented in the trial were from the Dutch servers that did have a search warrant. It is for this reason that these instructions that the judge gave to the jury were wrong and hurt Guzman, since the jury believed the judge, since they had no reason to doubt his instructions.

Please, look at page 6966 of the trial transcripts of the judge's instructions to the jury, where he says that all the evidence presented at the trial by the government was legally obtained. But that was not the case, since the calls presented in the trial came from the server whose IP address ended in 103, a server that never had a warrant from a judge in the Netherlands, nor that the government never included in its MLAT extensions.

### WITNESS PEDRO FLORES POINT

One of the government's witnesses was Pedro Flores. During trial, the government introduced a video in evidence, which was published in the magazine "Rolling Stones" where Guzman is speaking. The government also introduced into evidence many calls in which they alleged it was Guzman's voice.

In the cross-examination of Pedro Flores, Guzman's lawyer plays that video for the witness and also plays one of the calls that the government had introduced as

evidence. The witness, Pedro Flores, who claimed to have spoken with Guzman many times in person and by phone and who claimed that he recognized his voice, said that the voice on the call did not resemble Guzman's voice. I ask you Judges to please listen to the video of the Rolling Stones where Guzman speaks and listen to some of the calls that were presented at the trial and you will realize that it is not the same voice as Guzman.

### CONFIDENTIAL INFORMANT CRISTIAN RODRIGUEZ POINT

Both in the direct examination of the Govnerment and in the cross-examination of Guzman's lawyer, Christian Rodriguez never spoke of a server with an IP address ending in 103. Christian said that he supposedly created the communications network and that he was the administrator, since he was Guzman's trusted man. But he never said that there was another server that had a number ending in 103, nor did he say that members of the alleged Sinaloa Cartel had deleted the messages or that they had configured the server for text messages and that the number ended in 27.

They have lied about Dutch servers and who better witness than the confidential informant Christian to find out what happened to the Dutch servers, if he was the one who created Guzman's alleged communications network from 2009 to 2012. But he never spoke of anybody deleting messages nor that there was a server whose IP address ended in 103.

It is clear once again that Guzman's case was carried out with fraud and bad faith and the confidential informant agreed to carry out this whole story for the amount of $460,000 dollars that the FBI paid him, said by FBI agent Stephen Marston, who paid him that amount of money for his collaboration.

They also said that the text messages from the FLEXISPY company belonged to Guzman, without showing a single evidence that those licenses belonged to Guzman. Why believe what the government said about the text messages, if they lied with the evidence of the Dutch servers, saying first that the alleged Sinaloa Cartel spoke both in text messages and in voice calls and that Guzman spoke of transfer of drugs to the United States and also from violent acts and a series of disgusting events. And then in their motions that they presented to the court: one on July 30, 2018 and the other motion on March 23, 2021 to this court, they say that the members of the Sinaloa Cartel deleted the BlackBerry text messages.

In the motion of March 23, they said that the cartel configured the text message server, whose IP address ended in 27, but Christian Rodriguez never spoke about it in his direct examination with the government nor in the cross-examination with Guzman's defense. He does not talk about it because what the Government has said is not true.

Nor did the FBI agent Stephen Marston, who was the one who carried out the investigation of the servers in Holland, did not speak of a server whose IP address ended in 103.

It is easy to speak without evidence to harm since in the trial they did not present evidence from the Dutch servers. They had to present evidence from a server whose IP address ended in 103, making it believe that the calls were from the Dutch servers, committing fraud. It has become very clear that this case is too political. In order to prosecute Guzman, they had to lie throughout the entire process and violate the law from the beginning of the process; first with his extradition and then with the evidence presented by the IP whose number ended in 103, which never had a warrant signed by a

judge. They did everything they could to secure Guzman's conviction on February 12, 2019.

DATE: June 10, 2021

_____/s/_____
Joaquin Guzman Loera